Filed 8/3/26  Marriage of DeHerrera CA3

<u>NOT TO BE PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

| | |
|---|---|
| In re the Marriage of PAMELA and JULIAN DeHERRERA. | C104443 |
| PAMELA DeHERRERA,<br>    Appellant,<br><br>    v.<br><br>JULIAN DeHERRERA,<br><br>    Respondent. | (Super. Ct. No. 23FL0888) |

In this marital dissolution action, self-represented litigant Pamela L. DeHerrera appeals from the judgment entered after a bench trial on the division of the community estate, which resolved the contentious divorce proceedings between herself and her former spouse, Julian R. DeHerrera.[1]  Pamela argues reversal is required due to procedural and evidentiary errors related to the bench trial and errors in the division of the community estate.  In a related argument, Pamela contends the family court erred in

---

[1]     Because the parties shared the same last name during the family court proceedings, we refer to them by their first name after this first reference to avoid confusion.

denying her motion to set aside the judgment under Family Code section 2122[2] and other statutes.  Finding no basis for reversal, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Marriage and Divorce

Pamela and Julian married in 1985 and separated in 2013.  The parties had no minor children at the time of separation.  More than 10 years later, in 2023, Pamela filed a petition for dissolution of marriage.

Following separation, Julian remained in the marital home while Pamela lived elsewhere, except for a brief period in 2019.  According to Pamela, she had no option but to leave the marital home due to Julian's "prolonged and systematic abuse," including domestic violence.  By contrast, Julian claimed that Pamela abandoned the marriage "both physically and financially" because she could not be married to a physically disabled person.

In May 2024, a bench trial was scheduled for the division of the community estate.

In July 2024, the marriage was dissolved (i.e., the parties' marital status was terminated).

### II.    Bench Trial

A bench trial on the division of the community estate was held over the course of two partial days in October and November 2024.  Prior to trial, Pamela filed a document identifying the issues to be decided and her position on those issues, including the proper division of property, which she identified as her retirement plan, home furnishings, several vehicles, and the down payment on the marital home.[3]  While the record reflects

---

[2]    Undesignated statutory references are to the Family Code.

[3]    Certain pages from this document are not included in the appellate record.

2

that Julian also filed a document containing a statement of issues to be decided and his position on those issues, that document is not included in the appellate record.

During trial, which spanned less than one full day, only Pamela and Julian testified. The parties each submitted numerous documents for the family court's consideration, including 96 exhibits from Pamela. Neither party was represented by counsel.

### III. Family Court's Ruling

At the conclusion of trial, the family court issued a lengthy and detailed ruling, stating as follows:

"The court has had the opportunity to review and consider the testimony and evidence presented in this matter, both today [(i.e., November 4th)] as well as on October 16th. The court finds that the date of marriage … was October 5th, 1985, and the date of separation was July 10th, 2013.

"The court finds that essentially we are here for the division of property only. The status only judgment [(i.e., termination or dissolution of marriage)] has been completed. That was completed in July of this year.

"And the court finds that community property has the meaning ascribed under Family Code Section 65 and Family Code Section 760, which defines community property as all property, real or personal, wherever [situated], acquired by a married person during marriage while domiciled in this state.

"There is a presumption that property acquired during marriage is community [property] …

"The value of any asset is its fair market value, which is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell, and both having reasonable knowledge of the relevant facts.

[¶]

3

"The court finds that the items of community property that the court has before it to divide include the home in Camino … , the retirement account, … a Toyota vehicle, a Ford F250, a Chevy truck, as well as a trailer, and the household items.

"Taking each in turn, starting with the retirement account, the court does find that the retirement account is community property.  It was acquired during the marriage.  It was acquired in part through [Pamela's] work during the marriage, and therefore is community property, and is subject to division.

"And the court finds that the value [of the retirement account] as of the date of separation was just over $70,000, and … an equal … division results in a[n] equalization payment due from [Pamela] to husband of $35,331.  The court finds that [Pamela] kept the entire asset, and has … depleted the entire asset.  And therefore, the court is awarding an equalization payment of … $35,331.

"And the court does not find a QDRO [(i.e., qualified domestic relations order)] would be necessary, as there is no asset left to divide.  And the court bases its valuation … on the testimony and evidence presented from [Pamela].

"And the court finds that the Toyota pickup truck has a value of zero dollars.  That is awarded to [Julian] without offset.

"[T]hat -- F250 also has a value of zero dollars.  That is awarded to [Julian] without offset.

"And the court has considered the testimony presented from [Julian] regarding those two vehicles, and the court finds that their Kelley Blue Book values are relatively low, and each vehicle is in need of substantial repair.  The cost of the repairs is in excess of the value of the vehicles, and that's why the court has determined they have zero value.

"And the court finds that there was also a Chevy truck that was sold pendente lite, prior to the case being opened.  That was a community asset.  It was sold for … $2,000, and therefore a[n] equalization payment of $1,000 is due from [Julian] to [Pamela].

"The court also finds that there was a community asset of a trailer that was sold for $1,000, and the court finds that that results in an equalization payment from [Julian] to [Pamela] of $500.

"Next is the household furnishings.  The court did find [Pamela's] testimony … and evidence regarding the household furnishings to be compelling, and the court finds that the total value of the household furnishings and other personal property items that remain in the home as of … today's date, and were acquired during the marriage, to be $7,870.  The court is awarding those items to [Julian], with an equalization payment of $3,935 from [Julian] to [Pamela].

"And the court finds that the total equalization due from [Julian] to [Pamela] is $5,435.  The total amount of equalization due from [Pamela] to [Julian] is $35,331.  Those amounts offset with a total equalization payment due from [Pamela] to [Julian] of $29,896.  And that is [it] as to the assets.

"That brings us next to the community property debts.  The court finds that there was post-separation bills that were paid by [Pamela] with her separate property.  Those were community bills, and some were separate bills for [Julian] in the [amount] of $1,172.  That is to be reimbursed from [Julian] to [Pamela].

"Regarding the health insurance paid postseparation by [Pamela], the court is not awarding that amount to [Pamela].  The testimony by [Pamela] in this matter was that … the amount of insurance paid was for the entire family, there was not a breakdown of what was attributable solely to [Julian], and therefore the court is not making that award.

"Similarly, the court is not awarding the credit card debt payment to [Pamela].  The court finds that those credit card debts were community property.  The exhibit presented today by [Pamela], Exhibit 111, shows that those were debts that were acquired during the marriage, and therefore are community debt.

5

"That community debt was rolled into a further community debt when the home was refinanced, and therefore, that remains a community debt that is to be divided equally between the parties.

"The court does find that there should be a reimbursement of the down payment that was gifted by [Pamela's] mother to [Pamela]. And the court does find the evidence presented by [Pamela] on this issue to be compelling. [Julian's] evidence has not rebutted that evidence, and therefore, the court finds, by a preponderance of the evidence, that it was a gift made to [Pamela], which was a separate property gift from her mother, that was used to pay the down payment. And the court has not received any evidence that that was repaid, with the exception of [Julian's] testimony that the court does not find to be compelling.

"Therefore, [Pamela] is credited the $27,500 to the equalization payment, which leaves a balance of $2,396 payable from [Pamela] to [Julian].

"When subtracting out the post-separation bills that were paid by [Pamela] from her separate property of $1,172, the court finds that the remaining balance and the equalization payment is $1,224, payable from [Pamela] to [Julian].

"And court notes that both parties are requesting reimbursement through … *Watts* charges and *Epstein* credits [with respect to the marital home].[4] And the court notes that

---

**4**      " 'Where one spouse has the exclusive use of a community asset during the period between separation and trial [(e.g., marital home)], that spouse may be required to compensate the community for the reasonable value of that use.' [Citation.] The right to such compensation is commonly known as a '*Watts* charge.' [Citation.] Where the *Watts* rule applies, the court is 'obligated either to order reimbursement to the community or to offer an explanation for not doing so.' [Citation.] But 'where the asset is not owned outright by the community but is being financed,' the spouse in possession 'may satisfy the duty to compensate the community for use of the asset by making the monthly finance payments from his or her separate property.' [Citation.] Such offsets are commonly called '*Epstein* credits.' " (*In re Marriage of Falcone & Fyke* (2012) 203

6

… awarding *Watts* charges and *Epstein* credits is discretionary to the court. The court is not compelled to [award] those credits.

"And the court has considered the testimony from both parties, and finds that it is not appropriate in this case to award *Watts* [charges] and *Epstein* credits. And court notes that the parties have been separated for a substantial period of time. Each has taken on the responsibility at different times to continue to pay for the community asset, and the court finds that although they do not offset … each other equally, it is a relatively minor amount that would be owing. The court does not find awarding *Watts* [charges] and *Epstein* credits to be appropriate in this case.

"The court, therefore, is circling back to the remaining asset to be divided, and that is the home in Camino. The court finds that the fair market value of the home … is approximately $341,000. That is based on the estimates that the court has reviewed … on … several websites …, including Zillow, Redfin, and Realtor.com.

"And the court … notes that there is approximately $163,000 still owing on the home. The court is ordering the sale of the home, with the proceeds to be divided equally, minus the $1,224 that is payable from … [Pamela's] share to [Julian].

"The court is ordering that [Pamela] shall provide the name of three real estate agents to [Julian] on or before November 18th. [Julian] will then have until November 25th to select one of the three to list the home for sale. The home is to be listed for sale by no later than December 31st.

---

Cal.App.4th 964, 978-979 [the term "*Watts* charge" is derived from *In re Marriage of Watts* (1985) 171 Cal.App.3d 366, whereas the term "*Epstein* credits" is derived from *In re Marriage of Epstein* (1979) 24 Cal.3d 76].)

"The trial court determines what is due the community 'after taking into account all the circumstances' relevant to the exclusive possession by one spouse." (*In re Marriage of Falcone & Fyke, supra,* 203 Cal.App.4th at p. 979.)

7

"And [the] parties are to work cooperatively with the real estate agent to prepare the home for sale. That includes signing any necessary documents … to list the home for sale, and to ready the home to ensure that its condition is in a sellable condition.

"Upon sale of the home, the … proceeds … are to be divided equally between the parties, minus the $1,224.

"The court is allowing … either party … to buy out the other party's share of the equity in the home, [which] they may do so through a refinance of the home. If [a party] intend[s] to refinance the home and buy out the other party, they will need to have paperwork from a … loan servicer, by no later than December 31st, showing that they are preapproved to refinance the home for the amount that would include sufficient funds to buy out the other party. If both parties wish to buy the other out, then the court is ordering the sale of the home.

"I believe that addresses the issues that were raised in trial. The only other issue that the court needs to address is the issue of spousal support. And the court took no testimony on the [section] 4320 factors. Both parties have requested that the court reserve the ability to award spousal support to themselves, and to terminate it to the other parties.

"And the court finds that this is a marriage of long duration, and therefore, termination of jurisdiction over the ability to award spousal support to either party would not be appropriate. And the court is setting spousal support at zero dollars, and reserving jurisdiction."

When the family court asked the parties whether there was anything that it neglected to address, Pamela asked about "the *Epstein* credits"; specifically, whether she was entitled to a credit for the postseparation insurance and taxes she paid in connection with the marital home. In response, the family court reiterated that it was not awarding reimbursement related to the marital home in the form of *Watts* charges or *Epstein* credits. In doing so, the court explained that the difference between the *Watts* charges

8

and the *Epstein* credits "was around $10,000," and that it was exercising its discretion not to impose *Watt* charges or award *Epstein* credits. Aside from urging the family court to reconsider the value it assigned to the Chevy truck and trailer that Julian sold, Pamela affirmatively represented that there was no other issue for the court to address. When Julian indicated that he needed help in removing Pamela's "stuff" from the marital property, the family court explained that it was his responsibility to take care of the property that was awarded to him, including the vehicles and household items. Thereafter, Julian agreed that Pamela could retrieve her personal items from the outbuildings and/or sheds on the marital property.

After directing Julian to prepare the judgment, the family court issued a minute order, which included the court's findings as to the division of the community estate.

### A. Entry of Judgment

Several months later, in March 2025, the family court entered judgment on the division of the community estate.

### B. Motion to Set Aside the Judgment

In May 2025, Pamela filed a motion to set aside the judgment, which was largely based on Julian's alleged fraud and perjury. Pursuant to section 2122 and other statutes, Pamela sought equitable relief to "rectify an inequitable outcome" in the division of the community estate, and the adjudication of "omitted assets and liabilities" (e.g., rental income from the marital home, outdoor assets).

In support of her motion, Pamela asserted that Julian intentionally mispresented and concealed assets and liabilities and made false statements under oath and in his financial disclosures, which resulted in an "unfair" and "inequitable division of property." In Pamela's view, the judgment would have been different had Julian not engaged in deliberate and misleading conduct, including failing to fully disclose certain assets and liabilities. Among other things, Pamela asserted that Julian's "deliberate misrepresentations" and other misconduct included "presenting incorrect values for

9

vehicles, unauthorized sales of community property, false statements regarding household taxes and insurance, [and] non-disclosure of rents and refinance issue." According to Pamela, Julian's conduct resulted in a "materially unfair and inequitable division" of the community estate.

In July 2025, Julian filed a responsive declaration, which is not included in the appellate record.

Later that same month, after a hearing, the family court adopted its tentative decision, which found that Pamela had failed to demonstrate that the judgment should be set aside. In so ruling, the court stated: "All the arguments set forth in [Pamela's] moving papers were made at trial; [Pamela] simply does not agree with the court's rulings on these issues. This does not constitute grounds to vacate the judgment under [Code of Civil Procedure] Section 473[, subdivision](b) or under Section 2122. Furthermore, [Pamela's] conclusory statements that [Julian's] testimony at trial was false is not sufficient to establish actual fraud. [¶] The bulk of [Pamela's] moving papers argue against evidence that was already presented at trial. Mostly, [Pamela] argues that [Julian] was either lying at trial or that she does not agree with the court's ruling after considering evidence that was already presented at trial. This is more akin to a motion for reconsideration than a motion to set [aside a judgment]."[5]

At the hearing, Pamela conceded that her motion was supported by evidence that was not presented at trial. Pamela, however, claimed that the new evidence was submitted in response to Julian's perjury at trial. Additionally, Pamela asserted that the family court erred by failing to divide the outdoor assets or properly award reimbursement for the rent Julian collected. As for rent, Pamela argued that Julian

---

[5] The entire tentative decision is not included in the appellate record. Although unclear, the record discloses that at least a portion of one sentence is missing from the decision.

engaged in fraud by failing to disclose that he rented rooms in the marital home after the parties separated. In response, the family court stated that all the issues Pamela had raised in her motion were addressed at trial, and that there were not any new or different issues for the court to decide. In so doing, the family court explained that it would not hear any further argument from Pamela because she simply disagreed with the court's prior rulings. Thereafter, upon learning that the parties were working together to fix up the marital property, the family court denied Pamela's request to control the property—via her exclusive use and possession—while it was being prepared for sale.

### C. Appeal and Appellate Briefing

Pamela, proceeding as a self-represented litigant, timely appealed. Julian did not file a respondent's brief.

**DISCUSSION**

*I*

*Appellate Rules of Procedure*

As a preliminary matter, we summarize the rules of appellate procedure that govern this appeal.

" '[A] judgment or order of the trial court is presumed correct and prejudicial error must be affirmatively shown. [Citation.] "In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court. '[I]f any matters could have been presented to the court below which would have authorized the order complained of, it will be presumed that such matters were presented.' " [Citation.] … " 'A necessary corollary to this rule is that if the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed.' " [Citation.] "Consequently, [appellant] has the burden of providing an adequate record. [Citation.] Failure to provide an adequate record on an issue requires that the issue be resolved against [appellant]." ' " (*In re Marriage of Oliverez* (2019) 33 Cal.App.5th 298, 311-312 (*Oliverez*).)

11

We presume judicial duty is properly performed; that the trial court knows and applies the correct statutory and case law, and will ignore material it knows is incompetent, irrelevant, or inadmissible. (*In re Marriage of Davenport* (2011) 194 Cal.App.4th 1507, 1526.) "All issues of credibility are for the trier of fact, and all conflicts in the evidence must be resolved in support of the judgment." (*In re Marriage of Nichols* (1994) 27 Cal.App.4th 661, 670.)

"Conclusory assertions of error are ineffective in raising issues on appeal." (*Howard v. American National Fire Ins. Co.* (2010) 187 Cal.App.4th 498, 523.) It is well settled that " ' "the party asserting trial court error may not … rest on the bare assertion of error but must present argument and legal authority on each point raised. [Citation.]" [Citations.] When an appellant raises an issue "but fails to support it with reasoned argument and citations to authority, we treat the point as waived." ' " (*Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277; see also *Public Employment Relations Bd. v. Bellflower Unified School Dist.* (2018) 29 Cal.App.5th 927, 939 [we " ' "are not bound to develop appellants' arguments for them"; the " ' "absence of cogent legal argument or citation to authority allows this court to treat the contention as waived" ' "]; *Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52 ["[w]hen legal argument with citation to authority is not furnished on a particular point, we may treat the point as forfeited and pass it without consideration"].)

If the appellant establishes error, she must also provide some explanation as to how she was prejudiced by it. We will not reverse a judgment absent a showing that the appealing party suffered prejudice, and the appellant must make that showing with cogent argument and legal analysis. (*F.P. v. Monier* (2017) 3 Cal.5th 1099, 1107-1108; *Audish v. Macias* (2024) 102 Cal.App.5th 740, 751.)

We recognize that Pamela is representing herself in this appeal. However, "[a] self-represented party is to be treated like any other party and is entitled to the same, but no greater, consideration than other litigants having attorneys." (*Elena S. v. Kroutik*

12

(2016) 247 Cal.App.4th 570, 574.)  Thus, Pamela is not exempt from application of the normal appellate rules of procedure.  (*Flores v. Department of Corrections & Rehabilitation* (2014) 224 Cal.App.4th 199, 205 [the same rules apply to self-represented litigants as to any other party].)

## II
### *Inadequate Record and Deficient Appellate Briefing*

Before turning to Pamela's arguments, we note that our review of this appeal is significantly hampered by an inadequate appellate record, Pamela's deficient appellate briefing, and the lack of a respondent's brief.[6]

In designating the record on appeal, Pamela elected to proceed with a clerk's and reporter's transcript.  A clerk's transcript automatically includes certain default documents, such as the notice of appeal, the judgment or order appealed from, and the register of actions.  (Rule 8.122(b)(1).)[7]  Pamela designated additional documents for inclusion in the clerk's transcript (e.g., minute orders containing the challenged rulings, and Pamela's motion to set aside the judgment).  Pamela also successfully moved to augment the appellate record to include certain documents, including her pretrial

---

[6]     Because Julian did not file a respondent's brief, we "may decide the appeal on the record, the opening brief, and any oral argument by the appellant."  (Cal. Rules of Court, rule 8.220(a)(2); all further rule references are to the California Rules of Court.) "Although some courts have treated the failure to file a respondent's brief as in effect a consent to a reversal, it has been said that the 'better rule … is to examine the record on the basis of appellant's brief and to reverse only if prejudicial error is found.' " (*In re Bryce C*. (1995) 12 Cal.4th 226, 232-233.)  This approach gives full effect to the presumption that the judgment or order appealed from is correct and that, in order to prevail, the appellant has the burden to not only overcome that presumption but also demonstrate reversible error.  (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.)

[7]     Rule 8.122(b) sets out the required contents of a clerk's transcript.  In addition to other requirements, a clerk's transcript must include any "document filed or lodged in the case in superior court" pertaining to the issue(s) on appeal (rule 8.122(b)(3)(A)) and "[a]ny exhibit admitted in evidence, refused, or lodged" (*id*., (b)(3)(B)).

statement of issues and contentions and three trial exhibits. Nonetheless, the record, which includes the register of actions in the family court, reflects that certain essential documents or parts of them are missing (e.g., Julian's pretrial statement of issues and contentions, Julian's property declaration form [FL-160 form], Julian's responsive declaration to the motion to set aside the judgment, and portions of Pamela's pretrial statement of issues and contentions). The same is true about the trial exhibits. The record reflects that more than 100 exhibits were admitted into evidence. But, as Pamela concedes, the record does not include the original trial exhibits. (Pamela contends the family court "destroyed" the original trial exhibits.) Instead, the record (according to Pamela) includes copies of those exhibits. However, the "copies" are poorly identified, as they lack exhibit markings. As a result, we do not know whether the documents in the appellate record are accurate or exact copies of the exhibits admitted into evidence by the family court. Moreover, it is apparent from our review of the record that documents that were before the family court are not included in the appellate record.

In addition, Pamela's opening brief violates various appellate rules, including two significant procedural rules. First, Pamela failed to include "a summary of the significant facts limited to matters in the record." (Rule 8.204(a)(2)(C).) Instead, in the "global statement of facts" portion of her opening brief, Pamela includes facts that favor her positions and ignores evidence presented by Julian. Second, Pamela failed to provide proper record citations. (Rule 8.204(a)(1)(C).) Her opening brief does not include record citations for various factual statements. We will disregard all factual assertions without citation to the record. (*City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239.)

Despite the inadequate record and problems with the appellate briefing, we will do our best to provide meaningful review of this appeal.

14

*III*
*Community Property Judgment*

Pamela offers numerous reasons why the community property judgment must be reversed.  However, as we next explain, Pamela forfeited her appellate contentions and, in any event, has not shown error or prejudice.

### A.  Relevant Legal Principles and Standard of Review

As a general rule, all property acquired by the parties during marriage and before separation is community property.  (See §§ 760, 771; *In re Marriage of Valli* (2014) 58 Cal.4th 1396, 1408-1409 (conc. opn. of Chin, J.) [the presumption "that property acquired during the marriage is community, is perhaps the most fundamental principle of California's community property law"].)

Upon dissolution of a marriage**,** a family court generally must divide the community estate equally.  (§ 2550; *Sass v. Cohen* (2020) 10 Cal.5th 861, 885.)  " 'In this regard, the court has broad discretion to determine the manner in which community property is divided and the responsibility to fix the value of assets and liabilities in order to accomplish an equal division.' "  (*In re Marriage of Campi* (2013) 212 Cal.App.4th 1565, 1572.)  "The trial court possesses broad discretion to determine the value of community assets as long as its determination is within the range of the evidence presented.  [Citation.]  The valuation of a particular asset is a factual question for the trial court, and its determination will be upheld on appeal if supported by substantial evidence in the record."  (*In re Marriage of Nichols, supra*, 27 Cal.App.4th at p. 670.)

In determining the proper division of community property, a family court may employ several methods.  As relevant here, those methods include: (1) the asset distribution or cash-out method—award property to one spouse with offsetting assets awarded to the other spouse (which may include an equalizing payment); (2) the in-kind method—award equal shares of a community asset to each spouse; and (3) the sale method—sell the property and divide the proceeds between the spouses.  (*Oliverez,*

15

*supra*, 33 Cal.App.5th at p. 314; *In re Marriage of Cream* (1993) 13 Cal.App.4th 81, 88; *In re Marriage of Rives* (1982) 130 Cal.App.3d 138, 153.)  For purposes of effecting an equal division of community property, "the fair market value of a marketable asset in marital dissolution cases is the highest price on the date of valuation that would be agreed to by a seller, being willing to sell but under no obligation or urgent necessity to do so, and a buyer, being ready, willing and able to buy but under no particular necessity for so doing."  (*Cream*, at p. 89.)

We review the family court's judgment dividing community property for abuse of discretion.  (*Oliverez, supra,* 33 Cal.App.5th at p. 313; *In re Marriage of Sivyer-Foley & Foley* (2010) 189 Cal.App.4th 521, 526.)  A family court's admission or exclusion of evidence is also reviewed for abuse of discretion.  (*In re Marriage of Deamon* (2019) 35 Cal.App.5th 476, 481, fn. 5.)  Under that standard, we only reverse if, considering all the relevant circumstances, the court has " ' " 'exceeded the bounds of reason' " ' " or " ' "no judge would reasonably make the same order under the same circumstances." ' "  (*In re Marriage of de Guigne* (2002) 97 Cal.App.4th 1353, 1366.)

The family court's factual findings are reviewed under the substantial evidence standard.  (*In re Marriage of Sivyer-Foley & Foley*, *supra*, 189 Cal.App.4th at p. 526.)  " 'Substantial evidence' is evidence of ponderable legal significance, evidence that is reasonable, credible and of solid value."  (*Roddenberry v. Roddenberry* (1996) 44 Cal.App.4th 634, 651.)  " 'When a finding of fact is attacked on the ground that there is not any substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether there is any substantial evidence contradicted or uncontradicted which will support the finding of fact.' "  (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881 (*Foreman & Clark*); see *Ashby v. Ashby* (2021) 68 Cal.App.5th 491, 513 ["We do not review the evidence to see if there is substantial evidence to support the losing party's version of events.  Our power begins and ends with a determination if there was substantial evidence in the winning party's favor"].)  "In a

16

substantial evidence challenge to a judgment, the appellate court will 'consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the [findings]. [Citations.]' [Citation.] We may not reweigh the evidence and are bound by the trial court's credibility determinations. [Citations.] Moreover, findings of fact are liberally construed to support the judgment." (*Estate of Young* (2008) 160 Cal.App.4th 62, 76.)

### B. Evidentiary and Procedural Errors

We begin our analysis with the alleged evidentiary and procedural errors that Pamela contends resulted in the denial of due process, a fundamentally unfair proceeding, and the erroneous adjudication of property. Among other things, these errors include the family court's: (1) consideration of "surprise" or "undisclosed evidence" submitted by Julian; (2) failure to enforce the pretrial exhibit exchange order (which allowed Julian to withhold documents); (3) exclusion of certain documents; (4) restriction of Pamela's trial testimony while allowing Julian to testify "[f]reely" and present "shifting testimony"; (5) disregard of uncontroverted evidence; (6) reliance on irrelevant, speculative, or unsupported testimony; and (7) failure to make findings on all issues raised in the written filings and at trial, including adjudication of all community property.

We conclude that Pamela has forfeited her claims of evidentiary error by failing to raise timely objections in the family court. (See *In re Marriage of Feldman* (2007) 153 Cal.App.4th 1470, 1496 [" ' "An appellate court will not consider procedural defects or erroneous rulings where an objection could have been, but was not, raised in the court below" ' "]; *In re Marriage of Broderick* (1989) 209 Cal.App.3d 489, 501 [an appellant waives the "right to attack error by expressly or implicitly agreeing or acquiescing at trial to the ruling or procedure objected to on appeal"].) In addition, these claims are forfeited because they are conclusory and unsupported by meaningful legal argument, including citation and discussion of pertinent authority. (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 287.) Although Pamela cites cases standing for general legal

principals, she does not provide any legal analysis applying those cases to her circumstances. As a result, we may and do disregard her arguments. (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153 [an appellate court may disregard arguments that fail to disclose the reasoning by which the party reached the conclusion it asks us to adopt]; see *Allen v. City of Sacramento*, *supra*, 234 Cal.App.4th at p. 52 ["citing cases without any discussion of their application to the present case results in forfeiture"].)

We also reject Pamela's contention that reversal is required because the family court failed to adjudicate all community property issues. Contrary to Pamela's contention, the record reflects that the family court, in dividing the community estate, specifically considered the alleged rental income related to the marital home, "refinance-related liabilities," reimbursement claims as to the marital home (i.e., *Watts* charges and *Epstein* credits), health insurance, and property taxes.[8]

As for "outdoor assets," although the family court did not explicitly address these assets in its written ruling, the record does not reflect that Pamela's pretrial statement of issues and contentions identified any specific outdoor asset that was community property and subject to division.[9] Instead, Pamela's pretrial statement referenced a document that purportedly was attached—"FL-161 Outdoor Assets." (Capitalization omitted.) No such

---

[8] At trial, Julian testified that he did not use the postseparation medical insurance that Pamela paid for, which was a family health plan that provided coverage for their son. Julian also testified that, following separation, he did not obtain any rental income from renting out a room in the marital home. To the extent the family court credited Julian's testimony as to these issues, we may not revisit that determination in our review. (See *In re Marriage of Diamond* (2024) 106 Cal.App.5th 550, 567.)

[9] The record reflects that Pamela used a "local form" to advise the family court of the issues and contentions to be decided at trial. However, several pages of that document are not included in the appellate record. Pamela has provided no explanation for the omission of these pages.

document is attached to the statement included in the record before us.[10]  At trial, Pamela did not question Julian on direct examination about any specific outdoor asset that needed to be divided.  When Pamela subsequently testified, she briefly mentioned that a certain trial exhibit (Exhibit 54) contained a "list" of "outdoor items."  During Julian's testimony, the family court identified several community assets—the marital home, Pamela's retirement account, three vehicles, a trailer, and household items—and then asked the parties whether there was any other community asset that needed to be divided.  Pamela responded, "I don't believe so."  When Julian subsequently testified, he briefly mentioned an above ground swimming pool that he "took … down," and noted that "most" of the community property listed in Pamela's "FL-161" form was acquired as early as 1985.  Julian explained that, in his view, Pamela was "trying to offset the division of property by marking the[] prices [of these items] up high."  Later, after the family court issued its oral ruling dividing the community estate, Pamela did not, when asked, object to the ruling on the ground that the court neglected to address outdoor assets.

Under the circumstances presented, we conclude Pamela has forfeited her right to assert error regarding the family court's failure to divide outdoor assets.  (See *Oliverez, supra*, 33 Cal.App.5th at p. 318 [an appellate court " 'will ordinarily not consider procedural defects or erroneous rulings where an objection could have been, but was not raised below' "]; *In re Marriage of Broderick, supra,* 209 Cal.App.3d at p. 501 [an appellant waives her right to attack error by expressly or implicitly agreeing or acquiescing at trial to the ruling objected to on appeal].)

---

**10**     The clerk's transcript includes a one-page property declaration form (FL-161 form) prepared by Pamela, which lists various "outdoor items" and their estimated value. However, there is no indication that this specific document was filed in connection with the bench trial or admitted into evidence at trial.  As a result, we do not know whether the document is an accurate or exact copy of a document that was before the family court.

Forfeiture aside, no error or prejudice appears. As we have stated, it is Pamela's burden as the appellant not only to show error, but also to show prejudice from that error. (*Century Surety Co. v. Polisso* (2006) 139 Cal.App.4th 922, 963.) "[W]e cannot presume prejudice and will not reverse the judgment in the absence of an affirmative showing there was a miscarriage of justice." (*Ibid.*) To show prejudice, an appellant must do more than simply state that she was prejudiced. (*Ibid.*) Reversal is only required where the appellant demonstrates, based on sufficient legal argument supported by citation to authorities and the record, that it is " 'reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error,' " meaning the appellant must show error and that the error likely affected the outcome. (*Yield Dynamics, Inc. v. TEA Systems Corp.* (2007) 154 Cal.App.4th 547, 557.) Pamela has not met that burden here.[11]

### C. Substantial Evidence

Pamela argues there were various "factual errors" committed by the family court which rendered the community property judgment unsupported by substantial evidence, including the miscalculation of *Watts* charges and *Epstein* credits.

---

[11]     As previously indicated, among Pamela's various claims of evidentiary error include the family court's disregard of uncontroverted evidence and its reliance on speculative or unsupported testimony. Neither of these grounds are a basis for reversal. It is well settled that the trier of fact is not required to credit uncontradicted testimony. (*Sprague v. Equifax, Inc.* (1985) 166 Cal.App.3d 1012, 1028.) In this case, it was the family court's role to weigh the evidence, assess its truth or falsity, and act as the exclusive judge of witness credibility. (*E.G. v. M.L.* (2024) 105 Cal.App.5th 688, 705.) To the extent Pamela claims the family court erred by crediting Julian's testimony, her contention has no merit. Pamela has not pointed to anything in the record showing that Julian's testimony was inherently improbable or impossible. (See *In re Marriage of Aviles & Vulovic* (2022) 79 Cal.App.5th 694, 700 [" 'The testimony of a single witness, unless it is impossible or inherently improbable, will be sufficient to support the challenged findings' ".)

"A reviewing court must start with the presumption that the record contains evidence to support every finding of fact; the burden is on the party attacking a finding of fact for lack of evidentiary support to demonstrate that there is no substantial evidence to support the challenged finding" (*Orange County Flood Control Dist. v. Sunny Crest Dairy, Inc.* (1978) 77 Cal.App.3d 742, 758.) " ' " 'A party who challenges the sufficiency of the evidence to support a particular finding must *summarize the evidence* on that point, *favorable and unfavorable,* and *show how and why it is insufficient.* [Citation.]' [Citation.] '[W]hen an appellant urges the insufficiency of the evidence to support the findings it is his duty to set forth a fair and adequate statement of the evidence which is claimed to be insufficient. He cannot shift this burden onto respondent, nor is a reviewing court required to undertake an independent examination of the record when appellant has shirked his responsibility in this respect.' " ' " (*Ashby v. Ashby*, *supra*, 68 Cal.App.5th at p. 512.) When "an appellant fails to fulfill this duty[,] the claim is forfeited." (*Oak Valley Hospital Dist. v. State Dept. of Health Care Services* (2020) 53 Cal.App.5th 212, 237.)

In making her insufficiency of the evidence arguments, it was Pamela's duty to fairly summarize the evidence—both favorable and unfavorable—which is claimed to be insufficient to support the challenged finding. Her failure to do so forfeits the issue on appeal. (*Foreman & Clark*, *supra*, 3 Cal.3d at p. 881; *Oak Valley Hospital Dist. v. State Dept. of Health Care Services, supra*, 53 Cal.App.5th at p. 237.)[12] Moreover, by failing

---

[12] In claiming that the evidence is insufficient, an appellant must " 'demonstrate that there is no substantial evidence to support the challenged findings.' " (*Foreman & Clark*, *supra*, 3 Cal.3d at p. 881, italics omitted.) Pamela has not met that burden here. She has failed to tailor her claims of error to the applicable standard of review. Her insufficiency of the evidence arguments amount to a mere disagreement in how the family court assessed and weighed the evidence presented at trial, including the testimony of the parties. Further, Pamela misapprehends the appropriate standard of review and attempts

to provide an adequate appellate record, Pamela cannot satisfy her burden to show error, and we must resolve any challenge to the ruling against her. (*Hotels Nevada, LLC v. L.A. Pacific Center, Inc.* (2012) 203 Cal.App.4th 336, 348.) If, as here, "the record on appeal does not contain all of the documents or other evidence considered by the trial court, a reviewing court will 'decline to find error on a silent record, and thus infer that substantial evidence' supports the trial court's findings." (*569 East County Boulevard LLC v. Backcountry Against the Dump, Inc.* (2016) 6 Cal.App.5th 426, 434, fn. 9.)

### D. Remaining Contentions

Having reviewed the remaining contentions raised in Pamela's opening brief, we find no basis for reversal. Like her other claims of error, many of these contentions are conclusory and amount to a disagreement as to how the family court weighed and assessed the evidence presented at trial, which is not an adequate basis for reversal. Further, Pamela has not carried her burden to present reasoned legal argument, supported by citation to pertinent authority and evidence in the record, showing prejudicial error. As we have discussed, Pamela has not provided an adequate record for meaningful review of her contentions. In short, there is no basis to disturb the community property judgment.

### IV
### Motion to Set Aside the Judgment

Next, Pamela argues the family court erred in denying her motion to set aside the judgment.

### A. Relevant Legal Principles

Pamela's motion to set aside the judgment was based on both Code of Civil Procedure section 473, subdivision (b) and Family Code section 2122. (See *In re*

---

to reargue factual issues decided against her. (*In re Marriage of Davenport, supra*, 194 Cal.App.4th at p. 1531 [any attempt by an appellant to reargue factual issues is " 'doomed to fail' "].)

*Marriage of Heggie* (2002) 99 Cal.App.4th 28, 32 [explaining that Code of Civ. Proc. § 473 and Fam. Code, § 2122 coexist and operate as alternative bases for relief].) Subdivision (b) of Code of Civil Procedure section 473 authorizes the court, "upon any terms as may be just," to "relieve a party … from a judgment, dismissal, order, or other proceeding taken against the party through the party's mistake, inadvertence, surprise, or excusable neglect."

Section 2122, which only applies to marital dissolution cases, authorizes a judgment to be set aside on grounds of "[a]ctual fraud where the defrauded party was kept in ignorance or in some other manner was fraudulently prevented from fully participating in the proceeding," on grounds of "perjury in the preliminary or final declaration of disclosure," or on grounds of "duress" or "mental incapacity." (*Id*., subds. (a)-(d).) It also authorizes the set aside of a marital dissolution judgment in cases of "mutual or unilateral" mistake as to a stipulated or uncontested judgment, or a case in which a party "[f]ail[ed] to comply with the [financial] disclosure requirements." (*Id*., subds. (e)-(f).)

In cases where the moving party has established that grounds exist to set aside a judgment under section 2122—e.g., fraud, perjury, or incomplete financial disclosures— the trial court cannot grant that relief unless it also finds "that the facts alleged as the grounds for relief *materially affected the original outcome* and that the moving party would materially benefit from the granting of the relief." (§ 2121, sub. (b), italics added.) In other words, the moving party must persuade the court that if the facts urged in support of the set aside motion had been known before the judgment was entered, that judgment would have been materially different. The family court has no authority to set aside a judgment solely because it appears to be unfair or inequitable to a party, either at the time it was entered, or due to subsequent circumstances. (§ 2123.)

The decision to set aside a judgment, under either Code of Civil Procedure section 473, subdivision (b) or Family Code section 2122, is committed to the sound discretion of

the trial court. (*Zamora v. Clayborn Contracting Group, Inc.* (2002) 28 Cal.4th 249, 257 [motion for relief under Code of Civ. Proc. § 473, subd. (b)]; *In re Marriage of Varner* (1997) 55 Cal.App.4th 128, 138 [motion to set aside under Fam. Code, § 2122].) Thus, the decision will not be disturbed on appeal in the absence of a clear showing of abuse of discretion. (*Zamora,* at p. 257; *In re Marriage of Eben-King & King* (2000) 80 Cal.App.4th 92, 118.)

### B. Analysis

The family court did not abuse its discretion in denying Pamela's motion to set aside the judgment. The record reflects the motion was largely predicated on the same arguments and evidence Pamela presented in connection with the bench trial. The family court made clear that it viewed Pamela's motion as a reassertion of contentions it had previously rejected and declined to reconsider Pamela's arguments as a basis for setting aside the judgment. We see no error in the family court's ruling. Pamela had the burden to establish that the evidence cited in support of her motion, that if known to the family court prior to entry of judgment, would have convinced the court to rule differently. This burden, however, could not be met by evidence and arguments that were previously submitted to the court.

To the extent Pamela's motion was based on Julian's "false" testimony, the family court could have reasonably found that Pamela's conclusory claim of perjury was not a sufficient basis to set aside the judgment. Further, Pamela failed to demonstrate—either in the family court or now on appeal—that the facts supporting her motion "materially affected the original outcome." (§ 2121, subd. (b).) In other words, Pamela did not (and has not) shown that a materially different judgment would have been entered had the court known about the asserted wrongful conduct before the judgment was entered, i.e., Julian's alleged fraud (intentional misrepresentation and concealment of assets and

24

liabilities) and perjury (false statements under oath and within written disclosures). We conclude the family court properly denied Pamela's motion to set aside the judgment.[13]

## DISPOSITION

The judgment is affirmed. Because respondent (Julian) did not appear on appeal, neither party shall recover costs. (Rule 8.278(a)(5).)


/s/
WISEMAN, J.*

We concur:


/s/
MAURO, Acting P. J.


/s/
MESIWALA, J.

---

[13]    As previously indicated, in connection with her motion to set aside the judgment, Pamela requested an order allowing her to exclusively possess and control the marital property while it was being prepared for sale. To the extent Pamela claims the family court erred in denying her request, we deem this contention forfeited. Pamela has failed to provide meaningful legal analysis demonstrating error. (*United Grand Corp. v. Malibu Hillbillies, LLC*, *supra*, 36 Cal.App.5th at p. 153.)

*    Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.